1831.

CUNNINGHAM
v.
FREEBORN.

---

### CUNNINGHAM vs. FREEBORN and FREEBORN.

---

Difference in the mode of answering, between a bill filed for the discovery of property alleged to have been fraudulently assigned and for the purpose of setting aside the trust deed, and a bill for an account and distribution ; and see Note *a*, at the end of this case.

Upon exceptions taken to an answer to a bill of the first description, for insufficiency, the question for the court is, whether the defendant has sufficiently answered as to the consideration upon which the assignment was made, and as to the debts which it was intended to secure, and the particulars of the property assigned.

It is enough, if (in such a case) the assignee sets forth the assignment, and shows the debtor can have no right to property in his hands until the trusts of the assignment are satisfied ; without giving a more particular statement of the property than is shown by the assignment itself, if it be fair upon its face.   Note *a*.

---

*June* 20.
1831.

*Practice.*
*Exceptions to answer.*
*Voluntary assignment.*

THIS case came before the Vice-Chancellor on exceptions to a master's report, allowing certain exceptions which had been taken to the answer of George Freeborn, for insufficiency.

Mr. *D. Graham* for the complainant.

Mr. *J. Anthon* for the defendant, George Freeborn.

THE VICE-CHANCELLOR. The bill in this cause is filed by a judgment creditor of Thomas Freeborn, after executions returned unsatisfied. The scope and object of the bill is to have a discovery of the property of Thomas Freeborn; and to set aside all deeds conveying the same to George Freeborn and others, on the ground of fraud and collusion. It prays, that the complainant's judgments, of which there are several, may be satisfied out of the property.

The bill is not for an account and distribution of the property as trust estate under the assignment made to George Freeborn. A different bill would be necessary for that purpose. A bill of the latter description would have to be filed in behalf of all the creditors or *cestuis que trust*, calling upon the trustee to execute the trusts and to give an account of the property, as well as how he had disposed of it, &c. The question, therefore, is not whether the defendant has given such accounts and made such a discovery as would be necessary upon a bill by creditors claiming under the assignment: but (with a view to the question of fraud in the assignment itself, which is the foundation of this suit) whether the defendant has sufficiently answered, not only as to the consideration upon which the assignment was made, but also as to the debts which it was intended to secure, and the particulars of the property assigned?

These points embrace all that is material or necessary for the complainant to know, or for the defendant to answer, in the present suit; and in this view the pleadings are to be examined.

The second exception to the answer, (being the first allowed by the master,) alleges, as ground of exception, that the defendant has not set forth copies of the schedules of debts and credits that may have been annexed to the assignment, nor what papers were annexed, nor whether any other papers, pretending to assign the property, existed. The answer sets forth the assignment *in hæc verba*, and it does not appear upon the face of it that any schedules were annexed to the original,

for none are referred to.   There is no allegation or interroga-tory in the bill calling upon the defendant to answer whether any and what schedules were annexed to the assignment.   The only allegation is, that if a just and true account of the debts and credits of Thomas Freeborn were presented, a large balance would appear in favor of Thomas Freeborn, and suffi-cient funds be ascertained to pay and satisfy the complainant and other creditors.   I think the defendant has fully answered on this subject.   He has annexed to his answer a list or schedule of Thomas Freeborn's creditors, and the debts owing by him to each of them; and he says, he believes it to be a true state-ment.   He has also annexed a copy of the inventory of pro-perty assigned, which he understood to be the whole of his available property; and from which, he says, it fully and manifestly appears that Thomas Freeborn had not enough to pay his debts, and was insolvent.   And beyond what thus appears, the defendant says, he has no other knowledge, infor-mation, or belief in the premises.   I think this amounts to an assertion that he can answer no further on the subject of the debts and credits, either from his own knowledge or from information and belief.   The second exception should have been disallowed by the master; and the master's report, in that respect, is over-ruled.

The next exception allowed by the master, is the fourth. It relates to that part of the bill which calls for a dis-covery of the property of Thomas Freeborn.   The answer refers to the schedule B, which is annexed to it, as containing a true statement or inventory of all the property transferred, and its estimated value; and which, the defendant says, he understood to be the whole of Thomas Freeborn's available property.   The ground of the exception is, that he has not stated he either knew or believed it to be the whole.   I am inclined to think, however, the concluding part of the same sentence to which I have before alluded, is a sufficient negation. But supposing it to be otherwise, and that this defendant was to answer further and should say, " he knew or believed the sched-" ules did not contain the whole of Thomas Freeborn's property, " although it contained all that he, the said Thomas Freeborn,

"assigned:" of what avail would such an answer be to the complainant? It would not be evidence to affect Thomas Freeborn, the other defendant, against whom the complainant can only have a decree for the surplus of property not assigned, in case the assignment is not set aside. And if the assignment should be invalidated, then the defendant, George Freeborn, is bound to account only for the property contained in the schedule B, which, he says, is all that was assigned to him. It is, therefore, immaterial for the defendant, George Freeborn, to answer further on the subject of property not contained in the assignment to him; and, as I have before observed, his answer cannot be evidence against his co-defendant. Upon this principle, the master should have disallowed the fourth exception.

As respects the fifth exception, I do not perceive upon what grounds it was allowed by the master. The answer sets forth the assignment at length; the inducements for making it; the consideration upon which it was made; and gives a full and particular account in schedule A, of the debts intended to be secured and paid, and which he expressly declares are all just and true debts, *bona fide* due and owing to the persons named; and denies fraud. It is, for all and every material purpose, a full answer to the allegations of fraud, upon which it is sought to set aside the assignment; and which, I apprehend, is the only question to be presented in this case. This exception, in my opinion, should have been disallowed.

It is equally clear to my mind, that the seventh exception, and that part of the sixth exception which is allowed by the master, ought to have been disallowed. These exceptions, taken together, would seem to require from the defendant, George Freeborn, an account of the disposition made of the property assigned to him; also, in what respects it has deteriorated or increased in value, since he possessed himself of it; and how far he has executed the trusts of the assignment. I hold the matter of these exceptions not to be a subject of enquiry under the present bill. I have already stated, it is not within the scope and object of this bill to call the trustee to such an account. He is, for that reason, not bound to answer further on those subjects. He has shown particularly all the

1831.

CUNNINGHAM
*v.*
FREEBORN.

1831.

CUNNINGHAM
v.
FREEBORN.

property assigned, and the object of the assignment. If it should be declared void, the complainant will be entitled, in consequence of his superior diligence, to a priority of payment and satisfaction out of the property, as still being the estate of his debtor; and for all such purposes there is already sufficient disclosed. If the assignment holds good, the complainant can only come in with other creditors seeking an account in another form and upon entirely different grounds. I must likewise overrule the two last exceptions.

Order, allowing exceptions taken to the master's report, with costs.(a)

————◦————

June 13.
1831.

(a) In the case of *Benjamin Bailey* v. *Edward H. Nicoll and others*, a similar bill was filed; and the matter also came before Vice-Chancellor McCoun upon exceptions to a master's report, allowing exceptions to an answer of one of the defendants, Robert Smith, who was an assignee in the assignment which Edward H. Nicoll had made for the benefit of creditors. The nature of the exceptions were very similar to those in *Cunningham* v. *Freeborn*; and the principles adduced by his Honor were the same. In the course of his opinion, he said: "I have had occasion before, in "examining exceptions, to mark the distinction between an ordinary "judgment creditor's bill, which seeks a priority and preference of "payment out of the debtor's property, and a bill that calls assignees "or trustees to account for property assigned by the debtor—which "must be for an equitable distribution amongst all the creditors. "And it appears to me, that if this distinction was properly attended "to, the court would not be troubled with one half the number of "exceptions which are now brought here to be determined in cases "of this nature. Upon bills of the first description, complainants "must not expect such an answer from assignees, who may happen "to be made defendants in conjunction with the debtor, as they "would be entitled to upon a bill against them for an account and "distribution of the trust property. In the latter case, they would "be bound to disclose their transactions and set forth full and par- "ticular accounts of the trust property, and how they had disposed "of and applied it. In the former I hold it to be sufficient if they

" set forth the assignment ; deny the fraud, if any be charged ; and
" show, that the debtor can have no property in their hands until the
" trusts of the assignment are satisfied : without giving a more par-
" ticular statement of the property than is shown by the assignment
" itself, if it be fair upon its face, and certainly without going into
" an account of the manner in which they have disposed of the
" property or how they may have applied it before the filing of the
" bill. These being the views which I entertain in cases of this
" description, I shall not hesitate to overrule exceptions, whenever
" they appear to travel beyond the legitimate scope and object of the
" bill or are immaterial to the relief sought for by it."

*J. P. Hall*, for defendant, Smith.

*R. Sedgwick*, for complainant.